THE UNITED STATES DISTRICTS COURT

FOR THE EASTERN DISTRICT OF NORTH CAROLINA

Southern Division

---

JAMES NATHANIEL DOUSE, Pro Se.

Plaintiff

Case No. 7:22- cv-176-D

Vs.

UNITED STATES OF AMERICA,

DEPARTMENT OF THE NAVY

Defendants.

**FILED**

OCT 0 6 2022

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ D/EP CLK

---

(I).

1).        Come Now the Plaintiff, JAMES NATHANIEL DOUSE, Pro Se,

filing this Lawsuit which now includes **a New Federal Cause of Action** , against

The UNITED STATES OF AMERICA and DEPARTMENT OF THE NAVY

hereafter will reference these entities as Defendants.

2). This lawsuit was initially filed and assigned as The MDL-2218 and was

decided at the Northern District Court of Georgia, Atlanta Division December 05,

2016.  Respectfully, in my view that decision was mostly incorrect.  Because major

factor was ignored...Namely, The North Carolina's Mandatory Directives which

are The North Carolina Disability Statues.....§ 1-17. Disabilities; § 1-19.

Cumulative disabilities;  §1-20. Disability and §35A-1101. Definitions.

(II).

**New Federal Cause of Action:**

INTRODUCTION AND FACTUAL BACKGROUND.

3). Approx. **"August 10, 2022,** President Biden enacted H.R. 3967, a bipartisan Act crafted to improve health care and benefits for veterans exposed to toxic substances, such as in the water contamination crisis at Camp Lejeune in North Carolina. Section 804 of the Act, cited as the Camp Lejeune Justice Act, states that individuals who resided, worked, or were otherwise exposed <u>may bring an action to obtain appropriate relief for harm that was caused by exposure to the water at Camp Lejeune."</u>

"Marine Corp Base Camp Lejeune in Jacksonville, North Carolina suffered a tainted water supply from 1953 to 1987. U.S. Marine Corp (USMC) service members and their families residing and working on the base were exposed to toxic chemicals at concentrations from 240 to 3400 times the levels permitted by safety standards, resulting in a wide array of serious diseases. As many as one million people have been impacted by this water crisis."

4). Again, The MDL-2218 was decided at the Northern District Court of Georgia, Atlanta Division December 05, 2016. Respectfully, in my view that decision was mostly incorrect. Because major facts was ignored...

Namely The Mandatory Directive, The North Carolina Disability Statues.....

§ 1-17. Disabilities

§ 1-19. Cumulative disabilities

§ 1-20. Disability

§ 35A-1101. Definitions

Also the Northern District Court of Georgia, Atlanta Division decision was in clear

Violated of Federal Rules of Evidence:

Fed. R. Evidence Rule 103(a)(2)..................

Fed. R. Evidence Rule 103(a)...............

Fed. R. Evidence Rule 103(a)(2)..................

Rule 302. Applying State Law to Presumptions in Civil Case.......


5). When The Northern District Court of Georgia, Atlanta Division decision was

made on December 05, 2016 and supported by This United States Court of

Appeals for the Eleventh Circuit, it prompted The United States Congress to act

codifying specific new laws and rules in support of Camp Lejeune Toxic Water

Victims, as is this Plaintiff.


6). The Government defenses were mainly The North Carolina Statute of Repose

......... N.C. Gen Stat. § 1-52(16).....

However, Even though The North Carolina Mandatory Directives listed above

were complete ignored by The Northern District Court of Georgia, Atlanta

Division, even though this Plaintiff was the first litigant to make the court aware of

these new findings.

7). The North Carolina Mandatory Directives listed above blocks or preclude

Statute of Limitation; preclude Statute of Repose….. N.C. Gen Stat. § 1-52(16);

preclude Feres Doctrine and preclude Discretional Function.

(III).

## II Jurisdiction and Venue and Parties

8).
**Jurisdiction:**
See *28 U.S. Code § 1332(a)(1) - Diversity of citizenship; amount in controversy;
costs (a)The district courts shall have original jurisdiction of all civil actions where
the matter in controversy exceeds the sum or value of $75,000, exclusive of
interest and costs, and is between—
(1)citizens of different States;

09). Subject Matter Jurisdiction, this court has the Power to here this case.

10). This court has Personal Jurisdiction and powers over a defendant who is a
party involved in this controversy and has power to render judgments affecting the
defendant's rights.

*" Personal jurisdiction or in personam jurisdiction refers to a court's power over a
person (or entity) who is a party to, or involved in, a case or controversy before the
court, including its power to render judgments affecting that person's rights"

11). See FRCP Rule 4. Summons......FRCP 4(k)(1)(a)
(k) Territorial Limits of Effective Service.
   (1) In General. Serving a summons or filing a waiver of service establishes
personal jurisdiction over a defendant:

      (A)who is subject to the jurisdiction of a court of general jurisdiction in the
          state where the district court is located

**Venue:**

12). Venue is appropriate in this district under See 28 U.S.C. § 1391(a)(1).

**Parties:**

13). Plaintiff, JAMES NATHANIEL DOUSE is a resident, U.S. Citizen and

Domicile of The Great State Florida and lives in the judicial district, Manatee

County, Florida, as of September 18, 2019.

14). Defendants, UNITED STATES OF AMERICA and DEPARTMENT OF THE
NAVY

(IV).

15). This Plaintiff previously filed multiple <u>SF-95 Administrative Claim forms.</u>

**<u>See Exhibit " SF-95 Administrative Claim  where the Judge Advocate General
Denied Plaintiff's Claim "     enclosed.</u>**

This Petitioner file suit in Federal District Court in 2012.  Yet, The Judge

Advocate General single me out and sent me 2nd Administrative Adjudication

denial letter response 9 years Later that's dated January 25, 2019, ......Asking me

to Refile my Petition/Claim in Federal District Court.

## (V).

## **Federal Tort Claims Act**

16).

The Federal Tort Claims Act (FTCA) provides a limited waiver of the government's sovereign immunity. See 28 U.S.C. §§ 1346(b), 2671-2680. The FTCA provides that a claimant who wishes to pursue a tort claim against the federal government must first file an administrative claim with the relevant federal agency within two years after the claim accrues. Id. § 2401(b). Claimants must initiate any action in court within six months after the date of mailing of a notice of final denial of the administrative claim. Id. If the agency does not make a final disposition of the claim within six months after it is filed, **claimants may, at their option, initiate litigation** without waiting for a final denial. Id. § 2675(a).

The FTCA makes the United States liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674; see also id. § 1346(b)(1**) (the United States may be held liable in tort for the actions or omissions of its employees "under circumstances where the United States, if a private person, would be liable to the claimant** *in accordance with the law of the place where the act or omission occurred"*).

See: U.S. v. Olson, 546 U.S. 43 (2005) ....U.S. v. Olson---Holding that the United

States' liability under the FTCA is to be based on the state law liability of a private

party.

## Discretionary-Function Exception

17). "In accordance with the Supreme Court's decision in Berkovitz by Berkovitz v. United States, 486 U.S. 531, 535, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988), this court utilizes a two-step test to determine whether the FTCA discretionary function exception applies in a given case. See Kennewick Irrigation District v. United States, 880 F.2d 1018, 1025 (9th Cir. 1989).

We must consider first whether the challenged action is a matter of choice for the

acting employees: **"[T]he discretionary function exception will not apply when**

**a federal statute, regulation, or policy specifically prescribes a course of action**

**for an employee to follow.......**

## **The Feres Doctrine**

18). My Active Military Service Duties ended in November 1976 at <u>Camp Geiger</u>
<u>and there I was an Active Duty Marine at Camp Geiger</u>. Its a Base within a Base.
Again, <u>See Disability Map Enclosed</u>. Again, I was injured in January 1977. Within
a few weeks of consuming Camp Lejeune's water or almost immediately I know
something was wrong.....but I did not know what. There I was <u>a Private Citizen</u>
<u>where I perform no Military Duties at Camp Lejeune</u> North Carolina. <u>As a Private</u>
<u>citizen, I was there waiting to enter college for the Winter Semester</u>.,

Thus, The Feres Doctrine absolutely does not apply to me as I was not driving any
military vehicle nor performing any military activities but rather as a private
citizen watching cartoons and playing basketball all day.....and of course drinking
water after every game of basketball. I just had just turned 19 years old that
December 1976.

(VI).

## N.C. Statue of Repose

19). The Recent 2014 Intent of the North Carolina General Assembly Perhaps,

......with its clarification......"Session Law 2014-44 clarifies,

Session Law 2014-17 is titled "An Act Clarifying that Certain Civil Actions

Relating to Groundwater Contamination Are Not Subject to the Ten-Year Statute

of Repose Set Forth in G.S. 1-52,",   *Nevertheless, The Title of a law provides

some evidence of legislative intent. The clear and explicit intent of the North

Carolina legislature, as evidenced by the statutory language of the Products

Liability Act itself, is to allow the statute of repose to be tolled if **G.S. § 1-17**

applies." For minors in 1976,


20)The statute of repose for a products liability action as found in

G.S. § 1-50(6) provides: "No action for the recovery of damages for personal

injury, death or damage to property based upon or arising out of any alleged defect

or any failure in relation to a product shall be brought more than six years after the

date of initial purchase for use or consumption."  Statutes of repose operate

differently than statutes of limitations.

"The term `statute of repose' is used to distinguish ordinary statutes of limitation from those that begin to run at a time unrelated to the traditional accrual of the cause of action." Boudreau v. Baughman, 322 N.C. 331, 339-40, 368 S.E.2d 849, 856 (1988). In North Carolina, the statute of limitations begins to run against an infant, minor, or an insane person who is represented by a guardian at the time the cause of action accrues. If he has no guardian at that time, then the statute begins to run upon the appointment of a guardian or upon the removal of his disability as provided by G.S. § 1-17, whichever shall occur first. Bryant v. Adams, 116 N.C. App. 448, 459 (N.C. Ct. App. 1994). Equitable estoppel may also defeat a defendant's statute of repose defense. One North McDowell Assn. v. McDowell Development, 98 N.C. App. 125, 389 S.E.2d 834, disc. review denied, 327 N.C. 432, 395 S.E.2d 686 (1990)." *"A statute of repose "serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue," Black v. Littlejohn, 312 N.C. 626, 633, 325 S.E.2d 469, 475 (1985), and functions to give a defendant a vested right not to be sued if the plaintiff fails to file within the prescribed period. Colony Hill Condominium I Assoc. v. Colony Co., 70 N.C. App. 390, 320 S.E.2d 273 (1984), disc. review denied, 312 N.C. 796, 325 S.E.2d 485 (1985). 2G.S. § 1-50(6) is intended to be a substantive definition of rights which sets a fixed limit after the time of the product's manufacturer beyond which the seller will not be held liable. See Bolick v. American Barmag Corp., 306 N.C. 364, 293 S.E.2d 415 (1982). Whether a

statute of repose has expired is strictly a legal issue. Lamb v. Wedgewood South
Corp., 308 N.C. 419, 302 S.E.2d 868 (1983)."


21). Again, Plaintiff-Appellant does not deny that the operative effect of the statute
of repose, in this case, is to foreclose suit against Defendant-Appellee Six years or
Ten years ……..........However, Plaintiff-Appellant contend that Under North
Carolina Law for Minors  G.S. § 1-17 effects a grace period in which the statute of
repose can be tolled. G.S. § 1-17, entitled Disabilities, provides, in pertinent part:
(a) A person entitled to commence an action who is at the time the cause of action
accrued either

(1) Within the age of 18 years; Plus 3 years statutes of limitations = 21 years old.
In 1976, I was a Minor at the time of my Disabilities/Injury happened from
unknowingly consuming unlabeled Camp Lejeune Toxic Water and Neurological
Disorder and Liver Disorder Disabilities still remain to this present date and time.

**(3) . . . may bring his action within the time herein limited, after the disability
is removed, . . . within three years after the removal of the disability, and at no
time thereafter.**

(Emphasis added.) G.S. § 1-17 provides for the tolling of most limitations periods
during a person's minority. Where a guardian ad litem is appointed for a minor, the
limitation period begins to run from the time of the appointment. Jefferys v. Tolin,
90 N.C. App. 233, 368 S.E.2d 201 (1988).

(VII).

## **Petitioner's Qualifications for Claims:**

22). November 1976, while being Discharged, Plaintiff/Petitioner was Stationed at

Camp Geiger which is inside of the Main Base of Camp Lejeune Marine Base.

See Exhibit enclosed " DD-214   Plaintiff Lived Camp Lejeune/Camp Geiger "

23). As a Private Citizen Plaintiff Lived at Camp Lejeune.

See Exhibit enclosed "Camp Lejeune/Camp Geiger Maps of Affected Area"

Over all for approx. 90 days,

24). Plaintiff later went to College at South Georgia College, Douglas Georgia on

January 03, 1977.

25) Other qualifications states that a claimant must have lived at Camp Lejeune

between August 1953 and December 1987....its clearly noted and referenced on

Petitioner's DD214 ….. Camp Lejeune Year 1976

26). For WATER CONTAMINANTS IN WATER AT CAMP LEJEUNE

See Exhibit :

# The Water Contamination at Marine Corps Base Camp Lejeune was Sourced by The Agency for Toxic Substances and Disease Registry (ATSDR).

- 1). Trichloroethylene (TCE): Trichloroethylene (TCE) is a chemical used as an industrial degreaser for heavy machinery and as a refrigerant.

- 2). Tetrachloroethylene (also called perchloroethylene or PCE): Tetrachloroethylene is an industrial chemical used for dry cleaning and as a brake cleaner for vehicles.

- 3). Vinyl Chloride (VC): Vinyl Chloride is a gas used in the manufacturing of plastics including PVC (polyvinyl chloride).

- 4). Benzene: Benzene is a highly flammable compound that is the main component of petroleum fuels including gasoline and diesel.

27).

**Pursuant to North Carolina Statute: § 1-17; § 1-19 and § 1-20.**

**§ 1-17. Disabilities.**
    (a) **A person entitled to commence an action who is under a disability at the time the cause of action accrued may bring his or her action within the time limited in this Subchapter after the disability is removed, ........My Disabilities are permanent ...never removed.**

**§ 1-19. Cumulative disabilities.**
**When two or more disabilities coexist at the time the right of action accrues(becomes enforceable), or when one disability supervenes an existing one, the limitation does not attach until they all are removed. (C.C.P., ss. 28, 49; Code, ss. 149, 170; Rev., s. 364; C.S., s. 409.)**

**§ 1-20. The disability must exist when the right of action accrues.**
**No person may avail himself of a disability except as authorized in G.S. 1-19 unless it existed when his right of action accrued. (C.C.P., s. 48; Code, s. 169; Rev., s. 365; C.S., s. 410.)**


AND

**North Carolina Law §  35A-1101(7) and (8). Definitions**...............Additionally,

it did not consider North Carolina State Mandatory Directives for "Failure to

Warn" ....e.g. See Mandatory Directive: Failure to Warn Statutes North Carolina

Law § 99B-5.

28). A person is considered disabled if they meet one or more of the

following conditions: (1) the person is within the age of 18 years; (2) the

person is insane; or (3) <u>the person is incompetent as defined in N.C.</u>

<u>Gen. Stat. § 35A-1101(7)</u> or (8). N.C. Gen. Stat. § 1-17(a) (2015). An
"incompetent adult" is one who "lacks sufficient capacity to manage the
adult's own affairs or to make or communicate important decisions
concerning the adult's person, family, or property whether the lack of
capacity is due to mental illness, mental retardation, **epilepsy**, cerebral
palsy, autism, inebriety, senility, **disease**, **injury**, or similar cause or
condition." N.C. Gen. Stat. § 35A-1101(7) (2015).

29). Injuries to Petitioner/Plaintiff and Medications. Petitioner was Diagnosed with
the following diseases:

- Hepatic steatosis (A Liver Disorder) Hepatic steatosis (fatty liver disease)

- Epilepsy (seizures)Neurobehavioral effects (includes Seizures, Migraines
  Headaches, Vertigo Disorder, Balance Disorder, Visual Impairment,
  Fainting/Passing Out episodes, Acid Re-Flux...etc)

- Neurobehavioral effects (tremors, lack of coordination, movement or motor
  problems)

- Auto-Immune Disorders

- Nerve Damage ( All Over my body )

- **Trileptal:        Neurological Epilepsy/Seizure Disorder**
- **Gabapentin:   Chronic Migraine Headaches**
- **Meloxicam;    Joint Damage;**
- **Autoimmune Disease**
- **Trazadone:    Sleep Deprivation**
- VITAMIN D2 (ERGO)  Liver Disorder

Case No.

(VIII).

30).                              In Conclusion,

Respectfully, My appeal was dismissed not on the merits but on errors made by

the trial court, Violation of The Federal Rules of Evidence and ignoring The North

Carolina Mandatory Directive, Its Disabilities Statues.....and the State Laws where

this incident took place, was North Carolina.


31). Now, Some Attorneys are using The Mandatory Directive , North Carolina

Disabilities Statues Refiling Their Camp Lejeune Toxic Water claims based on

The United States Congress Approval of The Pact Act.  These are the same North

Carolina Disabilities Statutes that were first introduced and litigated by this

Plaintiff-Appellant.

The North Carolina Disabilities Statues, WHICH provides and exception for the

N.C. Statute of Repose based on disability or incompetence.

(IX).

32).

## **Relief sought:**

Plaintiff-Appellant's Injuries stated,

Failure to Warn Prior to my coming to Camp Lejeune,

Failure to Warn After leaving Camp Lejeune.

Negligence Infliction Of Emotional Distress and

Post-Discharge Failure To Warn.

33). Permanent Economic damages Loss which refers compensating Plaintiff-Appellant all monetary losses such as:

Loss of consoldium
Past and Future medical expenses,
Loss of past and future earnings,
Loss of use of property,
Loss of Enjoyment of Life
The economic value of domestic services, and
Loss of employment or business opportunities.
There is not a statutory limit on These Economic damages

34). The North Carolina Supreme Court's statement in Carolina Power & Light Co. v. City of Ashville, 597 S.E.2d 717, 722 (2004), that where the statutory language is clear and unambiguous, the Court does not
engage in Judicial construction but must apply the statute to give effect to the plain and definite meaning of the language." Pet. App. 6a n.5."

Case No.

35). WHEREFORE, Petitioner/Plaintiff move this United States District Court to consider the North Carolina Mandatory Directive of Disabilities and as it references this <u>Camp Lejeune Toxic Water Victim and the New Cause of Action As the President has signed into Law the Camp Lejeune PACT Act and justice requires it.</u>

36). Furthermore, from additional research, The recent Roundup lawsuits are very similar to the Camp Lejeune cancer lawsuits, since they both involve toxic chemical exposure.

37). WHEREFORE, Based on similar settlement data, Camp Lejeune settlement amounts for this Plaintiff-Appellant is between: $1,670,523 and $57,500,000 on average. <u>There were multi-million dollar settlements for individual cases in</u> Roundup (some were as high as $289 million).

38). This estimated settlement value for a Camp Lejeune lawsuit is only meant to provide an idea of what the average settlement could look like.

Respectfully Submitted,

Date October 6, 2022

James Nathaniel Douse .(Esq. status Pending)
615/316-8373
11523 Pamlbrush Trail Unit 138
Lakewood Ranch, Florida 34202

CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2022, I forwarded copies the

Summon, this Complaint and Exhibits to a Process Server, a 3rd party, to

served the Counsel for the Defense Via Process Server at their address

below:


Attorney General of the United States
Civil Division
Federal Tort Claims Act Litigation Section
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001




Respectfully Submitted,

Date October 6, 2022

James Nathaniel Douse .(Esq. status Pending)
615-316-8373
11523 Pamlbrush Trail Unit 138
Lakewood Ranch, Florida 34202